QUINN EMANUEL URQUHART & SULLIVAN, LLP
Eric. D. Winston (Bar No. 202407)
ericwinston@quinnemanuel.com
Bennett Murphy (Bar No. 174536)
bennettmurphy@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
Anthony P. Alden (Bar No. 232220)
anthonyalden@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for First Credit Bank

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>901 Strada, LLC,<br><br>　　　　　Debtors. | CASE NO. 2:19-bk-23962-BB<br><br>Chapter 11<br><br>**FIRST CREDIT BANK'S COMBINED OPPOSITION TO MOTIONS TO DISMISS AND FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:　　December 17, 2019<br>Time:　　10:00 a.m.<br>Courtroom: 1539<br>Address:　255 E. Temple Street<br>　　　　　Los Angeles, CA 90012<br><br>The Hon. Sheri Bluebond |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................................4

III.  ARGUMENT .......................................................................................................................7

     A.     The Dismissal Motion Should Be Denied................................................................7

     B.     In Lieu Of Dismissal, The Court May Appoint A Chapter 11 Trustee ......................9

     C.     Movants Have Not Shown Cause To Lift The Automatic Stay ..............................10

     D.    Annulment Of The Stay Is Unwarranted................................................................13

IV.  CONCLUSION .................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A&E Holdings v. Azra Inv. Corp.*
 (In re Azra Inv. Corp.), 2006 WL 6810952 (B.A.P. 9th Cir. June 7, 2006) .............................. 10

*In re Arnold*,
 806 F. 2d 937 (9th Cir. 1986)................................................................................................ 7, 8

*In re Badax, LLC*,
 2019 WL 5688151 (Bankr. C.D. Cal. Nov. 1, 2019) ......................................................... 10, 11

*In re Delaney-Morin*,
 304 B.R. 365 (B.A.P. 9th Cir. 2003) ........................................................................................ 11

*In re Dreamstreet, Inc.*,
 221 B.R. 724 (Bankr. W.D. Tex. 1998) ..................................................................................... 9

*In re Dzierzawski*,
 528 B.R. 397 (Bankr. E.D. Mich. 2015) .................................................................................... 7

*ECV Development, LLC*,
 2001 WL 7540960 (B.A.P. 9th Cir. 2007) ................................................................................. 7

*Fjeldsted v. Lien (In re Fjelsted)*,
 293 B.R. 12 (B.A.P. 9th Cir. 2003) .......................................................................................... 12

*Gruenbaum v. Bankers Trust Co. (In re Goldstein)*,
 5 F. App'x 757 (9th Cir. 2001).................................................................................................. 10

*In re Hanna*,
 2018 WL 1770960 (B.A.P. 9th Cir. Apr. 13, 2018)..................................................................... 7

*In re JRG Properties*,
 2013 WL 2318856 (Bankr. C.D. Cal. May 28, 2013)................................................................ 13

*In re Kingbrook Dev. Corp.*,
 261 B.R. 378 (Bankr. W.D.N.Y. 2001)....................................................................................... 8

*Marsch v. Marsch (In re Marsch)*,
 36 F.3d 825 (9th Cir. 1994) ............................................................................................... 6, 7, 8

*Marshall v. Marshall (In re Marshall)*,
 721 F.3d 1032 (9th Cir. 2013).................................................................................................. 6, 7

*Mataya v. Kissinger (In re Kissinger)*,
 72 F.3d 107 (9th Cir. 1995) ................................................................................................ 11, 12

*Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*,
 129 F.3d 1052 (9th Cir. 1997).............................................................................................. 10, 12

*In re Shamblin*,
 890 F.2d 123 (9th Cir. 1989)................................................................................................. 10, 12

*In re Stolrow's*,
 84 B.R. 167 (B.A.P. 9th Cir. 1988) ........................................................................................ 7

*Sullivan v. Harnisch (In re Sullivan)*,
 522 B.R. 604 (B.A.P. 9th Cir. 2014) .................................................................................. 7, 9

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*,
 311 B.R. 551 (Bankr. C.D. Cal. 2004) ................................................................................ 10

*In re Tucson Estates, Inc.*,
 912 F.2d 1162 (9th Cir. 1990) ............................................................................................. 10

*Williams v. United Inv. Corp. (In re Williams)*,
 124 B.R. 311 (Bankr. C.D. Cal. 1991) ................................................................................ 12

**Statutory Authorities**

11 U.S.C. § 362(a)(1) ................................................................................................................. 10

11 U.S.C. § 362(a)(2) ................................................................................................................. 10

11 U.S.C. § 1112(b)(1) ............................................................................................................. 6, 9

1   First Credit Bank ("First Credit"), the holder of a first lien on the principal asset (the

2   "Property") owned by 901 Strada, LLC (the "Debtor") securing over $17 million in loans,

3   respectfully opposes two motions filed by John C. Bedrosian, Judith Bredosian, Beatriz Horacek,

4   and Joseph Horacek (collectively, the "Movants"): the "Motion to Dismiss Bankruptcy Case

5   Pursuant to 11 U.S.C. Section 1112" [Dkt. No. 13] (the "Dismissal Motion") and the "Motion for

6   Relief from the Automatic Stay" [Dkt No. 14] (the "Stay Relief Motion"). This Opposition is

7   supported by the evidence contained in the Declaration of Bobak Ghasemmieh (the "Ghasemmieh

8   Decl.") and the Declaration of Anthony Alden (the "Alden Decl.").

9   **I.     INTRODUCTION**

10   The Movants are not lenders, trade vendors, employees or other typical creditors of the

11   Debtor but instead are owners of real property neighboring the Property who have initiated

12   litigation against the Debtor. They contend that they are threatened by the construction of a home

13   on the Property that they allege does not comply with regulations of the City of Los Angeles (the

14   "City"). They are pursuing claims for equitable and monetary relief in state court in a case set for

15   trial in March 2020. Construction has ceased pending further resolution of these issues, but the

16   state court recently issued an order, based on an *ex parte* application on a single day's notice,

17   requiring the demolition of the partially completed home and the appointment of a receiver to

18   carry out the demolition. That state court also indicated that it is contemplating an order to place a

19   super priority lien on the Property to allow the receiver to finance the demolition. In response, the

20   Debtor filed this chapter 11 petition. The Movants seek dismissal of the chapter 11 case, claiming

21   it was filed in bad faith. The Movants, alternatively, request retroactive relief from (or annulment

22   of) the automatic stay to give effect to the state court decision granting the appointment of a

23   receiver to oversee demolition of the construction.

24   First Credit, who *is* a present creditor of the Debtor and whose collateral *is* directly

25   impacted by Movants' requested relief, opposes both motions. This chapter 11 case was

26   commenced in good faith because it was no doubt filed to preserve the Property for all of the

27   Debtor's creditors, including First Credit, while giving the Debtor's estate - under the supervision

28   of a federal bankruptcy court - a chance to dispose of the Property in a way that complies with

1  state law and maximizes value. While the Debtor may have filed the case in response to the
2  potential appointment of a receiver charged with demolishing the construction, that is not itself
3  bad faith, and courts regularly recognize a debtor's right to seek bankruptcy protection precisely to
4  address the deleterious impact of state court litigation on the debtor's estate. The Debtor's
5  decision to seek bankruptcy protection was made in good faith, particularly when the Movants' *ex*
6  *parte* application deprived all creditors, including First Credit, a full opportunity to respond and
7  ensure that their interests are protected. The state court litigation did not do so, and the Debtor's
8  decision to seek this Court's protection fulfills a goal of the Bankruptcy Code to ensure equality of
9  treatment of creditors by giving all creditors of the Debtor some notice and opportunity to
10 participate. *Leslie v. Mihranian (In re Mihranian)*, 937 F.3d 1214 (9th Cir. 2019) (requiring
11 notice to non-debtor's creditors of request for substantive consolidation to ensure fairness to all
12 creditors).

13     First Credit, as the secured creditor whose lien was filed years before the Movants
14 commenced their litigation, would be particularly aggrieved by the Movants' requested relief.
15 First Credit has an interest in the Property and the assets of the debtor senior to the Movants.
16 Dismissing the chapter 11 case, or granting relief from stay to permit the appointment of a receiver
17 to cause the demolition of construction with a state law super-priority claim, would undisputedly
18 adversely affect the property interests of First Credit, with nothing resembling the protections
19 afforded by the Bankruptcy Code. The Bankruptcy Code provides First Credit, the Debtor, the
20 Movants, and other creditors tools to address these very issues, including adequate protection and
21 surcharge of collateral. *See, e.g.,* 11 U.S.C. §§ 361, 362, 506(c).

22     Moreover, the filing of the chapter 11 petition means that the Debtor will be required to
23 regularly disclose information to all affected parties and the Debtor's estate will have a forum to
24 investigate and pursue claims, including avoidance actions. Movants simply ignore these and
25 other benefits of bankruptcy. Finally, dismissal is not warranted because this Court can appoint a
26 chapter 11 trustee. A chapter 11 trustee can do the same thing as a state court receiver - oversee a
27 demolition if in fact it is required - but is better equipped under the Bankruptcy Code to ensure
28 that it is done in a manner that is fair and equitable to all creditors.

Similarly, relief from stay should be denied. The Movants' primary argument for "cause" under Bankruptcy Code section 362(d)(1) is that the petition was filed in bad faith. But there is no evidence that the petition was filed in bad faith. Further, the *Curtis* factors that the Movants cite actually point to the continued oversight by this Court, which requires denial of the Stay Relief Motion.

This case is not a two-party dispute that should be sent back to state court. First Credit, as a secured creditor, and the Debtor's other creditors, have interests at stake that deserve protection under the Bankruptcy Code. Further, and importantly, this case is *not* about any imminent public safety risk to the Movants, or any other potential party in interest. First Credit fully realizes that the Property must be constructed in a manner that complies with applicable state law and regulations, and First Credit expects that any further construction would not proceed without the permission of the City. The City recognized as late as October 16, 2019 that the Debtor had been making proposals to fix the City's concerns, and had not advocated for the immediate demolition of the construction on the Property.[1] According to a *Los Angeles Times* article, City officials conceded at a hearing this past Friday, December 13, that there is no "public safety issue to address on the property."[2] Indeed, even the state court, who ordered the appointment of a receiver, did not expect demolition to immediately occur.

The Movants request the annulment of the automatic stay primarily because they have taken actions in violation of the automatic stay and hope to excuse those actions. But that is not a legitimate reason to seek annulment. This request must fail under the applicable standards of the Ninth Circuit, which bar annulment by parties who took actions in violation of the stay while on notice of the stay. The Movants had proper notice of the automatic stay.

First Credit, as the largest creditor of the Debtor, respectfully requests this Court deny both motions.

---

[1] The City's close and continuous involvement in the construction of the Property, in First Credit's view, raises a serious question, perhaps to be addressed more formally at a future time, whether there are potential remedies against the City for the alleged defects at the Property.

## II.     FACTUAL BACKGROUND

First Credit is a bank organized under the laws of California. First Credit and the Debtor are parties to a Construction Deed of Trust dated February 21, 2014 (the "Loan"), with a current outstanding principal amount outstanding of not less than $17,587,630. Ghasemmieh Decl., Ex. 1. The Construction Deed of Trust provided for First Credit to advance loans to the Debtor from time to time for the construction of improvements on the Property. *Id.*

The Property consists of the land located at 901 Strada Vecchia Road, Los Angeles 90077. At the time that First Credit made the Loan, First Credit was not aware of any material concerns with the construction of a home on the Property. Since early 2011, the Debtor has sought to construct a home on the Property.

The Movants are the plaintiffs in an action styled, *Bedrosian et al. v. Hadid et al.,* Los Angeles Superior Court Case No. SC129388 (the "State Court Litigation"). Declaration of Anthony Alden ("Alden Decl.") ¶ 2. Movants commenced the State Court Litigation in June 2018, and are seeking an injunction mandating the demolition and removal of improvements from the Property, full restoration of the hillside between the Property and the Movants' properties, a judgment compelling Debtor and Hadid to pay to abate nuisances on the Property, as well as attorneys' fees and compensatory and punitive damages. Alden Decl., Ex. 6 at 53. First Credit was not named as a defendant when the State Court Litigation was commenced.

On or about January 23, 2019, the Movants in the State Court Litigation filed a Motion for Leave to File First Amended Complaint and Verified Petition For Writ of Mandate ("Motion for Leave"), seeking, *inter alia*, to add First Credit as a defendant in the State Court Litigation, alleging among other things that First Credit should be liable for the construction problems. *Id.* ¶ 3. On or about June 12, 2019, the court in the State Court Litigation denied the plaintiffs' Motion for Leave to the extent it sought to add First Credit as a defendant in the State Court Litigation.

---

[2] Ghassemieh Decl., Ex. 3 (available at https://www.latimes.com/california/story/2019-12-13/hadid-bel-air-mansion-legal-ruling).

*Id.* ¶ 4. At or about this time, First Credit was informed that the parties to the State Court Litigation had agreed that a portion, but not the entirety, of the Property would be demolished. *Id.*

On information and belief, through 2019, the Debtor attempted to fix issues with the construction on the Property. On October 16, 2019, the City's Department of Building and Safety wrote two letters indicating that its staff "had been working closely with the 901 Strada [] Road design team as they try to develop a solution to bring the property into compliance with the applicable codes." Bannett Decl., Exs. 22, 23. The staff concluded that certain aspects of construction needed to be demolished, though certain needed to remain. The City did not, however, indicate any imminent risks.

On or about November 14, 2019, First Credit and its counsel learned for the first time that the Movants had filed an application in the State Court Litigation seeking the appointment of a receiver to effectuate the demolition of the entire construction on the Property. First Credit also learned that there had already been a hearing in the State Court Litigation to address the Movants' application, and that the court had *sua sponte* raised the possibility of granting the receiver a super-priority lien on the Property for the costs of the demolition and the other expenses of the receiver pursuant to a "receiver certificate" under state law. Up until November 14, 2019, neither First Credit nor its counsel had been notified of the application to appoint a receiver to oversee the Property's complete demolition, served with the application, or afforded the opportunity to be heard.

On or about November 15, 2019, First Credit was served with an Amended Notice of Hearing for the Movants' application to appoint a receiver. The Amended Notice stated: "The Court instructed Plaintiffs to give notice to First Credit Bank because the Court is considering issuing a receiver certificate in the event it appoints a receiver." Alden Decl., Ex. 1. Attached to the Amended Notice was a copy of the plaintiffs' *Ex Parte* Application for Appointment of Receiver, which sought, *inter alia*, the appointment of a receiver to oversee the complete demolition of the Property. The *Ex Parte* Application had been filed on or about November 12, 2019, with no notice to First Credit or its counsel. The *Ex Parte* Application, including two accompanying declarations and exhibits, spanned almost 200 pages.

On November 20, 2019, just three business days after receiving the Movants' *Ex Parte* Application for Appointment of Receiver, counsel for First Credit attended the hearing on the Application. At the hearing, counsel requested the opportunity to make a written submission in response to the Application, given that: (a) the requested relief would dramatically and negatively impair First Credit's interest in the Property as the first-lien holder; and (b) First Credit had received the almost 200-page Application only three business days earlier. The state court denied counsel's request and instead granted the Movants' Application from the bench. The court deferred further consideration of whether it would grant a super-priority lien on the Property to December 6, 2019.

On or about November 22, 2019, plaintiffs filed a 10-page Proposed Order Appointing Receiver in the State Court Litigation. The Proposed Order provided, *inter alia*, for the proposed receiver "to take control of and operate the Receivership Property as needed" and to prepare a plan for the complete demolition of the Property down to the foundation. A true and correct copy of plaintiffs' Proposed Order is attached to the Alden Decl. as Exhibit 2.

On or about November 27, 2019, the Debtor filed its chapter 11 petition commencing the above-captioned case. That same day, the Debtor filed a Notice of Bankruptcy Filing and Automatic Stay in the State Court Litigation, giving the state court and all parties notice of the bankruptcy filing and automatic stay under Bankruptcy Code section 362. A true and correct copy of the Notice is attached to the Alden Decl. as Exhibit 3.

Even though they were on notice of the automatic stay being in effect, on December 2, 2019, Movants served First Credit with a Notice of Ruling in the State Court Litigation, which attached the Order Appointing Receiver that had been entered by the court the same day. The Order was substantially identical to that proposed by plaintiffs on November 22, 2019. A true and correct copy of the Order dated December 2, 2019 is attached to the Alden Decl. as Exhibit 4.

Two days later, on December 4, 2019, Movants sought informal discovery from counsel of First Credit's loan disbursement schedule to the Debtor. A true and correct copy of Movants' counsel's December 4, 2019 email is attached to the Alden Decl. as Exhibit 5.

On December 6, 2019, the court in the State Court Litigation held a hearing, which was scheduled by the Court prior to Debtor's bankruptcy filing, concerning the potential imposition of a super-priority lien on the Property. At that hearing, Movants again raised issues related to demolition of the Property, and for disclosure of First Credit's loan disbursement schedule to the Debtor, despite the automatic stay. However, in light of the Debtor's bankruptcy, and plaintiffs' representation they would be challenging the automatic stay, the court continued the hearing to December 12, 2019. The hearing was then again continued to December 17, 2019.

## III.    ARGUMENT

### A.    The Dismissal Motion Should Be Denied

A case may be dismissed under section 1112(b)(1) "for cause, unless the unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

Movants' only argument for "cause" is that the petition was filed in bad faith. *See* Dismissal Motion at 12-17. Section 1112(b) does not explicitly require that a case be filed in "good faith," but lack of good faith can be considered in determine whether there sufficient cause to dismiss a case. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1047 (9th Cir. 2013) (citing *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994)). As the Ninth Circuit observed in *Marsch*:

> The term "good faith" is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. … Courts have implied such limitations to deter filings that seek *to achieve objectives outside the legitimate scope of the bankruptcy laws.* … Pursuant to Section 1112(b), courts have dismissed cases filed for a variety of tactical reasons *unrelated to reorganization*.

36 F.3d at 828 (emphases added) (citations omitted).

Filing a case for the purpose of stopping creditors from enforcing claims in litigation does not itself establish lack of good faith. "[A]ll debtors file for bankruptcy in order to delay creditor action." *Marshall*, 721 F.3d at 1049. Filing for the purpose of "obtaining a stay of state court litigation" is not grounds for dismissal where it is motivated "so that creditors could be paid in an orderly fashion without sacrificing equity." *In re Hanna*, 2018 WL 1770960, at *6 (B.A.P. 9th

Cir. Apr. 13, 2018); *see Sullivan* v. *Harnisch (In re Sullivan),* 522 B.R. 604, 605 (B.A.P. 9th Cir. 2014) (noting that "leveling the playing field for other creditors of the estate" is a legitimate purpose for filing bankruptcy). Further, preventing a receiver from taking possession of the debtor's assets to the prejudice of other creditors has been recognized as a basis for a finding of good faith. *In re Stolrow's*, 84 B.R. 167, 170 (B.A.P. 9th Cir. 1988).

That is what has happened here. Filing for bankruptcy stays the State Court Litigation, but that stay benefits all creditors because it allows for an orderly supervision of the Property, including how to proceed with demolition if that is the proper path, to maximize value, and the participation of all creditors on a full and fair basis. The Movants are litigation claimants who have yet to prove their case; their concerns need to be balanced against other creditors' interests. Bankruptcy permits that. *In re Dzierzawski,* 528 B.R. 397, 417 (Bankr. E.D. Mich. 2015) (denying a motion to dismiss because, among other things, certain creditors would be prejudiced by dismissal).

In arguing for dismissal, the Movants primarily relief on *In re ECV Development, LLC*,[3] an unpublished decision of the 9th Circuit BAP. *ECV Development*, however, is not the law of this Circuit. Neither of the leading Ninth Circuit decisions, *Marsch* and *Marshall,* follow a "laundry list" approach. Rather, these Ninth Circuit opinions, following the Ninth Circuit's 1986 opinion in *In re Arnold,* define the standard quite differently:

> The existence of good faith depends upon an amalgam of factors and not upon a specific fact. … The bankruptcy court should examine the debtor's financial status, motives and the local economic environment. ... Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process.

806 F. 2d 937, 939 (9th Cir. 1986).

Under applicable Ninth Circuit standards, lack of good faith cannot be concluded based on the timing of the filing or the procedural sequence of events, nor from the conclusory "facts" urged by the plaintiffs. It cannot be known today that the right outcome for the Debtor's estate is

---

[3] 2001 WL 7540960 (B.A.P. 9th Cir. 2007).

to take its principal asset and raze it to the ground. The Debtor and its stakeholders should be afforded to demonstrate there is an alternative course.

For example, the Property could be sold under Bankruptcy Code section 363. Any buyer will need to address how to comply with the City's rules and regulations, which may include factoring in the cost of demolition. That opportunity to maximize value will be lost if the Dismissal Motion is granted. The record before it does not establish that the petition was filed "to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Marsch*, 36 F.3d at 828.

Preserving the jurisdiction of this court is warranted for another "legitimate objective" of the bankruptcy process. Remarkably, the Movants' copious submissions did not include a copy of their state court complaint. It includes no less than eight causes of action for money damages, both consequential and punitive. Alden Decl., Ex. 6. Absent demonstration of "cause" under Bankruptcy Code section 362(d)(1), the determination and enforcement of the Debtor's alleged liability to the Movants should occur through the centralized process of allowance and disallowance of claims in this Court, rather than through piecemeal litigation.

Commencement of the bankruptcy case has additional benefits, including transparency and disclosure by the Debtor's estate, the investigation and potential pursuit of avoidance actions, and a forum for the Debtor's estate to pursue causes of action against third parties. *See In re Kingbrook Dev. Corp.,* 261 B.R. 378,380 (Bankr. W.D.N.Y. 2001) ("Absent either the affirmative consent of all creditors to a dismissal or proof of full repayment of unsecured claims, this court is disinclined to deprive creditors of the bankruptcy protection and rights to which they are entitled."); *In re Dreamstreet, Inc.,* 221 B.R. 724, 725-26 (Bankr. W.D. Tex. 1998) (denying motion to dismiss bankruptcy case because, among other things, it would result in loss of avoidance actions).

**B.    In Lieu Of Dismissal, The Court May Appoint A Chapter 11 Trustee**

By its plain language, a court considering dismissal must engage in a multi-step process. First, the court must determine whether there is "cause" to either convert the chapter 11 case to chapter 7 or dismiss. Second, if there is "cause," then ***before*** converting or dismissing, the court

-9-    Case No. 2:19-bk-23962-BB

must conclude that the appointment of a trustee or examiner would not be in the best interests of creditors and the estate. *See In re Sullivan,* 522 B.R. at 605 (reversing order dismissing case because court did not consider whether dismissal, conversion, or appointment of trustee was in the best interests of creditors and the estate).

Many of the points raised by the Movants have little to do with whether the case was filed for a legitimate purpose, and far more to do with whether the debtor's principal is the right party to preside over the estate. The facts surrounding Mr. Hadid's personal conduct are, in First Credit's view, simply irrelevant to whether First Credit interests as a secured creditor should be protected under the Bankruptcy Code. Even if cause to dismiss were shown, section 1112(1)(b) states the court should dismiss the case "*unless* the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors." 11 U.S.C. § 1112(b)(1) (emphasis added).

Appointment of a Chapter 11 trustee, in lieu of dismissal, would be in the best interest of creditors. A Chapter 11 trustee, unlike the plaintiffs' hand-picked receiver, would stand as a fiduciary to all creditors in the case. *See Dreamstreet,* 221 B.R. at 726 (motion to dismiss a chapter 7 petition denied because a trustee in charge of the debtor was a much better alternative). A trustee, as fiduciary to all creditors and subject to this Court's oversight, would be best positioned to confer with all stakeholders, including the Movants and First Credit, to develop a consensual basis to preserve the value of the Property while addressing the City's and the Movants' concerns. First Credit respectfully submits that appointment of a disinterested trustee is a far superior outcome than allowing the interests of a single constituency to determine the course for the preservation and disposition of the Property.

C. **Movants Have Not Shown Cause To Lift The Automatic Stay**

Bankruptcy Code section 362 provides that the filing of a petition operates as a stay as to (1) the commencement or continuation ... of a judicial ... action or proceeding against the debtor ... ; [and] (3) any act to obtain possession of property of the estate or to exercise control over property of the estate ...." 11 U.S.C. § 362(a)(1),(2). "The statute is clear. Section 362(a)(1) prohibits the commencement and maintenance of judicial actions." *A&E Holdings v. Azra Inv.*

*Corp. (In re Azra Inv. Corp.)*, 2006 WL 6810952, at *4 (B.A.P. 9th Cir. June 7, 2006). "All judicial actions taken during the pendency of the stay are void." *Gruenbaum v. Bankers Trust Co. (In re Goldstein)*, 5 F. App'x 757, 759 (9th Cir. 2001); *see also In re Shamblin*, 890 F.2d 123, 125 (9th Cir. 1989) ("Judicial proceedings in violation of this automatic stay are void.").

The automatic stay is "designed to protect creditors from the 'race of diligence,' in which those who acted first would receive payment 'in preference to and to the detriment of other creditors.'" *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997) (quoting legislative history).

Bankruptcy Code section 362(d) provides that a court shall grant relief for "cause" and can tailor the relief to termination, annulment, or modification of the automatic stay. 11 U.S.C. § 362(a)(1), (2). The term "cause" is not defined in the statute but is to be construed by bankruptcy courts on a case-by-case basis. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).

The Stay Relief Motion asserts two arguments. One, that the *Curtis* factors favor granting relief from stay to continue the State Court Litigation. *See* Stay Relief Motion at 13. Two, that the case was filed in bad faith, to which the Movants devote most of their energy. *See id.* at 15-18.

In the case of the first argument, "[w]hile the *Curtis* factors are widely used to determine the existence of 'cause,' not all of the factors are relevant in every case, nor is a court required to give each factor equal weight." *In re Badax, LLC*, 2019 WL 5688151, at *6 (Bankr. C.D. Cal. Nov. 1, 2019) (citing *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 556 (Bankr. C.D. Cal. 2004)).

The Movants cite but do not list the "*Curtis* factors." The motion fails on at least three of them: the "lack of any connection with or interference in the bankruptcy case," "whether the litigation in the other forum would prejudice the interests of other creditors," and "whether the [non-bankruptcy] litigation involves the debtor as a fiduciary." *In re Badax*, 2019 WL 5688151, at *6.

The State Court Litigation, should it proceed, will eliminate the protection of the interests of First Credit, and other creditors, now in place under the Bankruptcy Code. The prejudice to First Credit is clear, and could not be clearer from the fact the state court is poised to impose a

super priority state-court lien via a "receivership certificate," with no apparent regard for the adequate protection of First Credit's lien.  The Debtor is under no fiduciary obligation to protect the interests of First Credit, or any other creditor.  It is acting solely in its own interest – and could at any point "throw in the towel" or reach a settlement in its self-interest, without regard to the interests of First Credit or other creditors of the estate.[4]

Moreover, while the Movants commenced the State Court Litigation in 2018 (after waiting for several years) they did not seek the appointment of a receiver – the critical component of why they have filed their Stay Relief Motion now – until November 2018.  The State Court Litigation thus is distinguishable from the typical *Curtis* case where, on the eve of trial, a debtor files for bankruptcy.  For example, in *Badax*, which Movants rely on, trial in state court had already occurred and had already granted the remedy of partition, directing the sale of the subject property.  *See Badax*, 2019 WL 5688151 at *2.

And while the fact that a trial date in March 2020 may be set and one of the Movants has requested a trial preference based on his age, the goal of the Stay Relief Motion is not to determine monetary liability of the Debtor, but to cause the destruction of First Credit's collateral.  *See* Stay Relief Motion at 14.  If Movants were to limit their requested relief to simply having the state court determine liability, with the Movants then having to have their claims addressed in this Court, then First Credit's opposition may very well be different.

In the case of the second argument – the Debtors' alleged bad faith – that argument is effectively identical to the Movants' argument for dismissal, and, as demonstrated above, First Credit believes that the chapter 11 case was commenced in good faith.  As the senior secured creditor whose loans preexisted the Movants' commencement of the State Court Litigation, First Credit's views should be accorded significant weight.  First Credit acknowledges that the Debtor's estate cannot ignore complying with state law even while in bankruptcy, *see* 28 U.S.C. § 959.

---

[4] The Stay Relief Motion asserts that there are no bankruptcy issues involved.  First Credit notes that the Debtor has asserted counterclaims, and the alleged misconduct of one of the Movants could give rise to equitable subordination under Bankruptcy Code section 510(c).  Thus, at least as to one of the Movants, there may be a "bankruptcy issue".

Notably, however, the City is not the party asking for relief from stay and, in fact, has reportedly indicated it does not believe that there is any imminent public safety issue. It is First Credit's understanding that no construction in violation of City's rules and regulations is currently happening.

The Court has options short of outright termination of the automatic stay. "Section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay." *In re Delaney-Morin*, 304 B.R. 365, 369 (B.A.P. 9th Cir. 2003) (citing *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995)). Modification of the stay could be subject to limitations and conditions to avoid interference with the bankruptcy case and prejudice to creditors. These may include:

- Retention of jurisdiction over the Property except as provided in the order modifying the stay.
- Exclusion of the granting of liens on the Property, or any sale or transfer of the Property absent order of this Court.
- Requiring orders respecting the use of the Property, other than in the ordinary course, to be subject to providing adequate protection of the liens of First Credit.
- Permitting interested parties to be heard on shortened notice if the state court has, or may be, taking actions outside the scope of the order modifying the stay.

Movants' "my way or the highway" approach is incompatible with the flexibility in fashioning stay relief under the Bankruptcy Code and applicable law. If the Court is inclined to grant relief, the Court should order, that the parties meet and confer on the appropriate scope of an order modifying the stay with the goal of achieving a proper balancing of the interests of all stakeholders.

### D. Annulment Of The Stay Is Unwarranted

Movants also request annulment of the automatic stay. They do so because the automatic stay has been violated. Specifically, the state court entered an order authorizing the appointment of a receiver after the chapter 11 case had been filed, and the Movants repeatedly participated in hearings in the State Court Litigation to seek to obtain substantive relief.

1    The order purported to vest the receiver with the power "to take possession, custody, and control" over the Property, and, subject only to the state court's approval and the availability of funds, "complete the demolition of the structure on the … Property." Alden Decl., Ex. 4 ¶ 3(a), (j).

While the Section 362 authorizes annulment of the automatic stay, "[t]he power to annul the stay must … be exercised sparingly." *Williams v. United Inv. Corp. (In re Williams)*, 124 B.R. 311, 316 (Bankr. C.D. Cal. 1991). "Retroactive annulment … should be applied only in extreme circumstances." *In re Kissinger*, 72 F.3d at 109 (internal quotations omitted); *In re Shamblin*, 890 F.2d at 126 ("any equitable exception to the automatic stay should be narrow and applied only in extreme circumstances"); *but see Fjeldsted v. Lien (In re Fjelsted)*, 293 B.R. 12, 26 (B.A.P. 9th Cir. 2003) (applying "balance of equities" test.)

Annulment here is unwarranted. Movants acted in the State Court Litigation with actual notice of the filing of the bankruptcy case. *See* Alden Decl., Ex. 3. "The purpose of annulment of the stay is to protect 'creditors and third parties who have, innocently and *without knowledge of the case*, taken actions or detrimentally changed their positions in pursuit of their state or federal remedies." *In re JRG Properties*, 2013 WL 2318856, at *1 (Bankr. C.D. Cal. May 28, 2013).

## IV.    CONCLUSION

First Credit respectfully submits that dismissal of the case or termination of the stay is not warranted, certainly not mere days into the case. However aggrieved they may be, and even if rightly so, the Movants have not established there is an emergency situation requiring immediate attention by the state court. To the contrary, it is clear from the state court record that any demolition of the property would require a year, or more. Balanced against this is the paramount interest in preserving the value of the Property, and providing adequate protection of First Credit's first lien.

For these reasons, and the other reasons set forth herein, the motions should be denied.

1  DATED: December 16, 2019           Respectfully submitted,

2                                      QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
3

4

5                                      By  */s/ Eric Winston*
                                          Eric D. Winston
6                                         Michael L. Fazio
                                          Anthony P. Alden
7                                         Bennett Murphy

8                                         Attorneys for First Credit Bank